# LIDDLE & ROBINSON, L.L.P.

800 THIRD AVENUE
NEW YORK, N.Y. 10022

(212) 687-8500
FACSIMILE: (212) 687-1505

September 19, 2014

**BY ECF**
The Honorable Andrew L. Carter, Jr.
United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

     Re: *Michael Picarella v. HSBC Securities (USA) Inc.*, No. 14 CV 4463 (ALC)

Dear Judge Carter:

  We represent Plaintiff Michael Picarella. We write in response to Defendant HSBC's September 12, 2014 letter requesting a pre-motion conference on its intended motion to dismiss Plaintiff's unlawful retaliation claims, brought under Title VII and the New York State and New York City Human Rights Laws.

  HSBC asserts (1) that Picarella's entire "federal claim is . . . time-barred" because he had notice of two of the many acts of retaliation alleged in his Amended Complaint ("AC") prior to the 300-day statutory period preceding the filing of his EEOC Charge; (2) that none of the retaliatory acts alleged constitute "adverse employment actions" necessary to support a Title VII retaliation claim; and (3) that Picarella has not adequately pled a causal connection between the protected activity and the retaliation alleged. Each of these grounds is wholly without merit.

  I. The Allegations of Picarella's Amended Complaint

  Beginning in Spring 2012, and continuing throughout 2013, Picarella complained to HSBC senior management, and its Human Resources department, orally and in writing, that a young female co-worker ("Jane Doe") had been sexually harassed by senior HSBC executives, both in the bank's New York offices, and at off-site conferences. One such executive was Eileen Hedges, Senior Vice President and Head of Business Development (Americas)—to whom both Picarella and Doe reported. (AC ¶¶ 11-14, 66-68). The sexual harassment Picarella reported included subjecting Doe to sexually-intimidating remarks, pressuring Doe to have sex with senior male HSBC executives, sexually-intimidating touching of Doe by such executives, and false reports by to HSBC employees that Doe was having sex with HSBC clients.

  Picarella's EEOC Charge was filed on June 27, 2013. (AC ¶ 90). The AC alleges that, in the 300-day period preceding his Charge, and thus beginning August 31, 2012, HSBC retaliated against Picarella by taking a series of materially adverse actions against him that stripped him of his job responsibilities, failed to promote him as promised, froze his compensation at 2011 levels, caused severe reputational damage and loss of earning capacity, and in sum destroyed his once-promising career. These adverse actions are specifically described in the AC and discussed

in the sections that follow. The AC alleges that this pervasive retaliation resulted in damage to Picarella including loss of earnings, loss of earning capacity from reputational harm, and emotional pain and anguish.

## II.   None of the Adverse Actions Alleged Are Time-Barred

With the exception of Picarella's exclusion from a senior management weekly sales meeting known as the "inner circle" in April 2012 (AC ¶ 48), all of the adverse actions alleged in the AC occurred after August 31, 2012, and thus within the 300-day statutory period prior to the June 27, 2013, filing of Picarella's EEOC Charge. They are plainly not time barred.

The allegation that HSBC retaliated against Picarella by reneging on its promise to promote him to Managing Director and Head of Business Development, when Hedges was reassigned (AC ¶ 36), is the *only* adverse employment action alleged that HSBC challenges as time-barred. Yet neither the well-plead allegations of the AC, nor the emails referred to therein (AC ¶¶ 54-56), demonstrate that Picarella had definite notice that he would not be promoted to Hedges' position as Head of Business Development (Americas) until September 5, 2012, when the final decision was communicated to him by COO Suzy White. (AC ¶ 56, 58). Moreover, even if the trier of fact determined that Picarella had actual notice of the decision prior to August 31, 2012, there is no material consequence because Picarella can recover for failure to promote retaliation (and all other adverse actions) under his pendent state law claims. *Van Zandt v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir. 1996) (three year statute of limitations).

## III.   The Adverse Employment Actions Are Sufficiently Alleged

To establish a retaliation claim under Title VII, a plaintiff "must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Millea v. Metro-North R.R.*, 658 F.3d 154, 164 (2d Cir. 2011), quoting *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 68 (2006). The existence of an adverse employment action establishes that the retaliation charged produced injury or harm. *Burlington*, 548 U.S. at 68; *accord Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 569 (2d Cir. 2011).

Much of the retaliatory conduct alleged in the AC (summarized at AC ¶ 90) has been held to constitute "adverse employment action" under the *Burlington* standard, and thus to cause substantial harm and injury—not "trivial harms," as HSBC's letter suggests. Adverse actions include "significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (*abrogated on other grounds*) (quotation omitted). In addition to Picarella's allegation that HSBC failed to promote him in 2012, a central adverse action alleged is that HSBC stripped Picarella of his job responsibilities or materially diminished them. This retaliation included: (1) reassigning Picarella's responsibility for monitoring HSBC's Suitability compliance on September 12, 2012 (AC ¶ 61); (2) instructing Picarella's colleagues not to invite Picarella to meetings because he "had an axe to grind with the firm" on or around October 3, 2012, and replacing Picarella at those meetings (AC ¶ 75); (3) excluding Picarella from 2013 client

planning sessions on December 13, 2012 (AC ¶ 76); (4) removing Picarella's name from his department's Organizational Chart on or around December 18, 2012; and (5) removing Picarella as Hedge Fund Governance Committee Chair on February 12, 2013 (AC ¶ 80). Stripping an employee of his material responsibilities in a manner that reduces his discretionary functions or otherwise negatively alters the terms and conditions of his employment is a well-recognized adverse action. *See Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 209-10 (2d Cir. 2006); *Awad v. City of New York*, No. 13 Civ. 5753 BMC, 2014 WL 1814114, at *3 (E.D.N.Y. May 7, 2014) ("stripping of plaintiff's responsibilities").

The AC also asserts that Picarella suffered adverse employment actions when HSBC attacked his reputation by: (1) falsely reporting on October 3, 2012, that he was suing the company and advised other employees to "be careful" when speaking with him, suggesting disloyalty (AC ¶ 74); (2) stating to Picarella's peers and supervisors that he "did not add value to the organization" and falsely reporting that "the bank is suing Picarella" (AC ¶ 81); (3) announcing that Picarella "won't be working here much longer" in December 2012 (AC ¶ 78); and (4) prior to filing his June 27, 2013 EEOC Charge, announcing that "Picarella is trouble" and advising his peers not to associate with him (AC ¶ 83). These acts constitute adverse actions because they "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington*, 548 U.S. at 68. These falsehoods effected a change in Picarella's professional standing that "harms a plaintiff's reputation, opportunities for advancement, and earning potential [and] may constitute adverse employment action." *Tse v. UBS Fin. Servs., Inc.*, 568 F. Supp. 2d 274, 288 (S.D.N.Y. 2008), *citing Bernheim v. Litt*, 79 F.3d 318, 325 (2d Cir. 1996). Ultimately, whether an injurious action qualifies as being 'adverse' is a heavily fact-specific, contextual determination. *Tse*, 568 F. Supp. 2d at 288.[1]

IV. Picarella Has Adequately Pled Causal Connection Between His Protected Activity and the Retaliation Alleged.

The temporal proximity between Picarella's repeated complaints and HSBC's acts of retaliation is clear. *See Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 224 (2d Cir. 2001). Picarella's protected activity covers the entire period from February 2012 to the filing of his EEOC Charge on June 27, 2013, which includes the retaliatory adverse actions discussed above. HSBC's assertion that the AC fails to allege that the retaliators had knowledge of Picarella's protected activity is false. That knowledge is specifically alleged: "[T]he fact that Picarella had complained to HSBC Human Resources about the unlawful sexual harassment of Jane Doe was widely known by Picarella's managers . . . ." (AC ¶¶ 26-27). HSBC as an institution also knew of Picarella's protected activity because he repeatedly complained to Human Resources. A general institutional knowledge that Picarella engaged in protected activity is sufficient alone. *Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 210 (2d Cir. 2006).

---

[1] Compensatory damages for lost earning capacity based on reputational harm may be awarded under both Title VII and state law. *Sanders v. Madison Square Garden, L.P.*, No. 06–CV–589 (GEL), 2007 WL 2254698, at *13 (S.D.N.Y. Aug. 6, 2007), *opinion withdrawn in non-relevant part for reconsideration*, 525 F. Supp. 2d 364 (S.D.N.Y. 2007). *Accord United States v. Vulcan Soc., Inc.*, 897 F. Supp. 2d 30, 48-49 (E.D.N.Y. 2012).

Respectfully submitted,

*James R. Hubbard*

James R. Hubbard

JRH/mlk

cc: Damien Marshall, Esq. (by email)