UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MICHAEL PICARELLA,

                    Plaintiff,

          -against-

HSBC SECURITIES (USA) INC.,

                    Defendant.

---

14-cv-4463 (ALC) (AJP)

**DEFENDANT'S RULE
56.1 STATEMENT OF
MATERIAL FACTS**

Pursuant to Local Civil Rule 56.1, Defendant HSBC Securities (USA) Inc. submits the

following statement of material facts in support of its motion for summary judgment.

## I.      Parties

1.      Defendant HSBC Securities (USA) Inc. ("HSBC") is a Delaware corporation with its

principal place of business at 452 Fifth Avenue, New York, New York 10018.  Marshall

Declaration Exhibit ("Ex.") 97 (Second Amended Complaint ("Complaint") ¶ 2);

Ex. 99 (Answer & Defenses to Second Amended Complaint ("Answer") ¶ 2).

2.      Plaintiff Michael Picarella was employed by HSBC as a Senior Vice President, Sales

Management, Global Markets (Americas) from May 5, 2011 until March 26, 2015.

Ex. 97 (Complaint ¶ 34); Ex. 99 (Answer ¶ 34); Ex. 3 (HSBCPIC00000031);

Ex. 95 (HSBCPIC00005259).

## II.     Other Relevant Individuals

3.      ██████████ was employed by HSBC as an Analyst in Sales Management, Global

Markets (Americas) from February 2010 until May 31, 2012.  Ex. 112 ██████ 52:19 – 53:5,

76:17-22).

1

4.      ███ employment by HSBC was terminated on May 31, 2012, effective June 1, 2012. Ex. 112 (███ 53:2-5).

5.      ███ employment was terminated on the ground that she lied multiple times to HSBC Human Resources employees about the nature of her relationship with co-worker James Rist in the context of an internal investigation.  Ex. 116 (Weiss 50:10 – 51:18, 68:12-24); Ex. 43 (HSBCPIC-RIST00002267 at 68); Ex. 102 (HSBCPIC-RIST00000005 at 06).

6.      ███ subsequently alleged that certain HSBC employees had sexually harassed her. Ex. 97 (Complaint ¶¶ 11-12); Ex. 99 (Answer ¶¶ 11-12).

7.      Eileen Hedges was employed by HSBC as a Senior Vice President and the Head of Business Development (Americas)[1] from 2007 to August 2012.  Ex. 97 (Complaint ¶ 34); Ex. 99 (Answer ¶ 34); Ex. 109 (Hedges 8:25 – 9:21, 50:20-25).

8.      ███ reported to Hedges from March 2010 until May 31, 2012. Ex. 8 (HSBCDLTDOC-00012424 at slide 10); Ex. 112 (███ 77:7 – 78:17); Ex. 109 (Hedges 10:6-15).

9.      Picarella reported to Hedges from May 2011 until July 2012.  Ex. 97 (Complaint ¶ 34); Ex. 99 (Answer ¶ 34); Ex. 47 (HSBCPIC-RIST00002202); Ex. 109 (Hedges 68:10-17).

10.     Suzanna ("Suzy") White is a Managing Director and the Chief Operating Officer for Global Markets (Americas) at HSBC and has held that role since on or around November 2011. Ex. 20 (HSBCPIC00051934 at 36); Ex. 122 (White Decl ¶ 1).

11.     Prior to becoming Chief Operating Officer, White was Deputy Chief Operating Officer. Ex. 122 (White Decl. ¶ 1).

---

[1] The group headed by Eileen Hedges and her replacements has at various times been referred to as Business Development, Sales Business Management and Sales Management.

12.     White supervised Picarella from July 2012 until September 2012.  Ex. 122 (White

Decl. ¶ 7).

13.     After September 2012, White no longer supervised Picarella and had limited day-to-day

interaction with him.  Ex. 122 (White Decl. ¶ 22).

14.     Carlos Pablo Pizzimbono was employed by HSBC as a Managing Director and the Head

of Sales for Global Markets (Americas) during the relevant period until he left HSBC in

November 2014 to pursue opportunities outside the financial services industry.

Ex. 121 (Pizzimbono Decl. ¶¶ 1-2).

15.     Hedges reported to Pizzimbono until December 2011, when she became a direct report to

White and a dotted-line report to Pizzimbono until Hedges left HSBC in June 2013.  Ex. 109

(Hedges 9:22 – 10:5, 51:14-18); Ex. 121 (Pizzimbono Decl. ¶ 3).

16.     Pizzimbono never directly supervised Picarella.  Ex. 121 (Pizzimbono Decl. ¶ 3).

17.     Carol Semetulskis, formerly Carol Jenner, is the Chief Operating Officer for Global

Markets, Japan at The Hongkong and Shanghai Banking Corporation Limited ("HSBC Tokyo"),

which is a member of the HSBC Group.  Ex. 120 (Semetulskis Decl. ¶ 1).

18.     Previously, Semetulskis was a Senior Vice President and Head of Sales Business

Management (Americas) in the New York offices of HSBC.   Ex. 120 (Semetulskis Decl. ¶ 1).

19.     Prior to that, Semetulskis was a Vice President and Operational Risk Manager at HSBC.

Ex. 120 (Semetulskis Decl. ¶ 1).

20.     Semetulskis was promoted to Head of Sales Business Management (Americas) at HSBC

in September 2012 and was subsequently promoted to Senior Vice President.

Ex. 120 (Semetulskis Decl. ¶ 2).

21.     From 2006 until September 2014, Michael Karam was the Chief Operating Officer and Business Manager for Global Precious Metals at HSBC.  Ex. 110 (Karam 7:16-23); Ex. 118 (Karam Decl. ¶ 1).

22.     Since September 2014, Karam has been HSBC's Head of Sales Business Management for Global Markets (Americas).  Ex. 110 (Karam 4:19 – 5:6, 7:16-23); Ex. 118 (Karam Decl. ¶ 1).

23.     Ellen Weiss was at all relevant times Head of Human Resources for HSBC Global Banking and Markets (Americas).  Ex. 116 (Weiss 7:2-10).

24.     From January 2010 until March 2012, Didier Descamps was the Co-Head of Global Markets at HSBC.  Ex. 108 (Descamps 4:20-24); Ex. 117 (Descamps Decl. ¶ 1).

25.     Since March 2012, Descamps has served as the Head of Global Markets (Americas). Ex. 108 (Descamps 4:20-24); Ex.117 (Descamps Decl. ¶ 1).

### III.     Picarella's Employment at Barclays Capital

26.     From 2004 until January 2011, Picarella was employed by Lehman Brothers & Co. ("Lehman") and its successor, Barclays Capital, Inc. ("Barclays").  Ex. 113 (Picarella 21:9-16); Ex. 106 (HSBCPIC00001912).

27.     Picarella was hired by Lehman as a Vice President in 2004.  Ex. 114 (Picarella 350:16-25).

28.     Picarella remained a Vice President during his approximately seven years of employment at Lehman and Barclays.  Ex. 114 (Picarella 350:16-25, 352:22 – 354:4).

29.     In his 2009 year-end review at Barclays, Picarella's "Overall Performance Grade" was ███ on a scale of "A – D," with "A" being the highest.  Ex.1 (BARC_000007 at 11); Ex. 114 (Picarella 355:24 – 356:18).

4

30.     In his 2009 year-end review at Barclays, Picarella was awarded a ▮▮▮ on a scale of "A – D" in the following category: ██████████████████████

██████████████████████████████████

██████████████████████████████

███████████████████████████████████

█████████████████████ Ex. 1 (BARC_000007 at 7).

31.     In his 2009 year-end review at Barclays, Picarella's appraiser observed that "███████

██████████████████████████████████

██████████████████████████████

Ex. 1 (BARC_000007 at 7).

32.     In his 2009 year-end review at Barclays, Picarella's appraiser wrote: "███████

██████████████████████████████████

█████████████████ Ex. 1 (BARC_000007 at 08).

33.     In his 2009 year-end review at Barclays, Picarella's appraiser observed that ████████

██████████████████████████████████

██████████████ Ex. 1 (BARC_000007 at 08).

34.     In his 2009 year-end review at Barclays, Picarella's appraiser observed with respect to one of Picarella's objectives: ████████████████████████████

██████████████████████████████

Ex. 1 (BARC_000007 at 09).

35.     In his 2010 mid-year review at Barclays, Picarella was awarded a ▮▮▮ on a scale of "A – D" in the following category: ██████████████████████

████████████████████████████████████████████

████████████████████████████████████

36.     In the course of his employment by Barclays, Picarella requested that he be assigned a new manager.  Ex. 114 (Picarella 359:7-22).

37.     Barclays terminated Picarella's employment in January 2011 as part of a restructuring. Ex. 114 (Picarella 298:20 – 299:5); Ex. 4 (BARC_000024).

**IV.     Picarella Performed Poorly at HSBC Prior to Engaging in Protected Activity**

38.     Picarella was hired by HSBC in May 2011 as a Senior Vice President in Sales Management, Global Markets (Americas).  Ex. 97 (Complaint ¶ 34); Ex. 99 (Answer ¶ 34); Ex. 3 (HSBCPIC00000031).

39.     Picarella's initial salary at HSBC was ████████ per year.  Ex. 3 (HSBCPIC00000031).

40.     Picarella's offer letter stated he would be "eligible to receive a discretionary bonus," and that "[a]ny discretionary bonus will be awarded at the sole discretion of the Company and based on factors including the performance and profitability of the Company and your business area, as well as your own performance and profitability."  Ex. 3 (HSBCPIC00000031).

41.     Hedges completed Picarella's mid-year 2011 review, which she discussed with Picarella on August 17, 2011.  Ex. 5 (HSBCPIC00000095); Ex. 109 (Hedges 19:10-13).

42.     In his mid-year 2011 review, Picarella received a rating of "3". Ex. 5 (HSBCPIC00000095 at 99); Ex. 113 (Picarella 94:18-22).

43.     At the time, HSBC employees' ratings were calibrated as follows: 20% of employees received either a "1-Exceptional" or "2-Outstanding" rating, 70% of employees received a "3-Strong", and 10% of employees received either a "4-Inconsistent" or "5-Poor" rating. Ex. 122 (White Decl. ¶ 11); Ex. 104 (HSBCPIC-RIST00003784 at slide 2).

44.     The review stated that Hedges and Picarella "had a good discussion about his first 3 months at HSBC," and that they "discussed a few minor adjustments to his addressing snr management as getting to the point, quickly vs long explanations."  Ex. 5 (HSBCPIC00000095 at 99); Ex. 113 (Picarella 94:6-17).

45.     On September 14, 2011, Hedges expressed concern that Picarella circulated her work product to Pizzimbono without copying her, which she took to mean that Picarella was "trying to take credit" for her work.  Ex. 6 (HSBCDLTDOC-00010730); Ex. 109 (Hedges 78:7-23).

46.     This was a "common occurrence with Mr. Picarella" both with Hedges' work and "with other people, as well."  Ex. 109 (Hedges 78:18-23).

47.     On October 13, 2011, ████████wrote to Picarella's co-worker Christopher DeLuca that Picarella had spent the whole day on his mobile phone in other people's offices. Ex. 7 (HSBCPIC00005039).

48.     On November 22, 2011, Hedges told ████████ that she confronted Picarella and "read him the riot act last night about his attitude to people".  Ex. 9 (HSBC-ST00000445); Ex. 10 (HSBC-ST00001528); Ex. 11 (HSBC-ST00000444); Ex. 12 (HSBC-ST00007220).

49.     Hedges completed Picarella's year-end 2011 review, which she discussed with Picarella on December 21, 2011.  Ex. 23 (HSBCPIC00000106); Ex. 109 (Hedges 26:11-15).

50.     In his year-end 2011 review, Picarella received a rating of "3". Ex. 23 (HSBCPIC00000106 at 107); Ex. 113 (Picarella 89:14-16).

51.     The review stated that Picarella "needs to be better at communicating among all relevant parties when deci[si]ons are being made.  That includes up and across layers of management. We will start weekly staff meetings in 2012 to help this."  Ex. 23 (HSBCPIC00000106 at 107); Ex. 113 (Picarella 95:13-18).

52.     By the time of this review, Hedges observed that Picarella "had poor communications skills" and "didn't really collaborate very well with other people in the department or other stakeholders we dealt with in other groups."  Ex. 109 (Hedges 75:20 – 76:10).

53.     In his 2011 year-end review discussion, Hedges informed Picarella that Pizzimbono and White "did not think highly" of him.  Ex. 113 (Picarella 14:18-25, 20:23 – 21:2); Ex. 109 (Hedges 42:12-14); Ex. 22 (HSBC-ST00003928); Ex. 82 (HSBCPIC00000311 at 17 ¶ 18).

54.     Picarella "did not take [Hedges'] comment seriously."  Ex. 113 (Picarella 88:19 – 89:6).

55.     In his 2011 year-end review, Hedges told Picarella that "it might be a good idea if [he] looked for another job."  Ex. 113 (Picarella 20:18-22); Ex. 82 (HSBCPIC00000311 at 17 ¶ 18).

56.     Picarella received a discretionary bonus for the year 2011.  Ex. 101 (Plaintiff's Response to Defendant's First Set of Requests for Admission ("Pl.'s Resp. to Def.'s 1st RFAs") No. 7).

57.     Picarella's 2011 discretionary bonus was ████.  Ex. 24 (HSBCPIC00005199).

58.     Picarella "anticipated [his] bonus being higher than what [he] had received."  Ex. 113 (Picarella 19:4-11); Ex. 19 (Picarella000636).

59.     In late 2011 or early 2012, Pizzimbono learned that Picarella was upset about the anticipated range of his 2011 bonus.  Ex. 121 (Pizzimbono Decl. ¶ 5).

60.     On December 6, 2011, ████ wrote to DeLuca that Picarella "needs to pick up and do some work even if he thinks its beneath him."  Ex. 15 (HSBCPIC00005047).

61.     ████ further wrote that "he has dumped things on em [sic] in the past that I think he thought was beneath him and now he is pissed about the bonus" and "he told Eileen he made a mistake and he is going to call his lawyer".  Ex. 15 (HSBCPIC00005047).

62.     On December 7, 2011, ▮▮▮▮ wrote to DeLuca that Picarella "is jsut [sic] done after hearing the news about his bonus", and "ha[d] done v little work", and DeLuca replied "yeah he's been MIA almost all day … lousy attitude".  Ex. 17 (HSBCPIC00005052).

63.     On April 3, 2012, ▮▮▮▮ reported to Hedges that Picarella called Rist a "few months ago" to "complain about his bonus all the time".  Ex. 34 (HSBC-ST00003262).

64.     Picarella's supervisors and coworkers observed that Picarella often failed to complete his work on time and that he was frequently away from his desk or unavailable during business hours.  Ex. 122 (White Decl.¶ 31(e)-(f)); Ex. 14 (HSBC-ST00000410); Ex. 25 (HSBC-ST00003065); Ex. 109 (Hedges 81:20 – 82:2, 82:13-23, 86:6-19).

65.     In late 2011, Hedges observed that Picarella was "not on the desk all the time" and was "not getting the work we need him to get done, done."  Ex. 109 (Hedges 97:4-9).

66.     Beginning on or around December 8, 2011, because Picarella was "always MIA", "always [a]way from his desk", and "no one knew where he was," Picarella's co-workers ▮▮▮▮ and DeLuca referred to him as "where's Waldo".  Ex. 109 (Hedges 80:25 – 81:7, 81:20 – 82:2); Ex. 112 ▮▮▮▮ 269:10 – 270:6); Ex. 7 (HSBCPIC00005039); Ex. 18 (HSBCPIC00005054); Ex. 26 (HSBCPIC00005055); Ex. 33 (HSBC-ST00005700).

67.     On December 21, 2011, ▮▮▮▮ complained to DeLuca that "mike is nto [sic] the most helpful person".  Ex. 21 (HSBC-ST00000517).

68.     Picarella's coworkers observed that he failed to appropriately complete tasks for Pizzimbono and White.  Ex. 109 (Hedges 90:8-24, 94:13 – 95:14, 96:17 – 97:18); Ex. 31 (HSBCDLTDOC-00021747); Ex. 13 (HSBCPIC00005045); Ex. 14 (HSBC-ST00000410).

69.     On December 1, 2011, Hedges observed that Pizzimbono did not "trust mike", and ▮▮▮▮ agreed.  Ex. 13 (HSBCPIC00005045); Ex. 109 (Hedges 94:7 – 95:14).

70.     On December 1, 2011, ███ observed that Pizzimbono might be "upset" with Picarella because a "███ request for" a very senior HSBC executive "was not done when [Pizzimbono] wanted it." Ex. 14 (HSBC-ST00000410); Ex. 109 (Hedges 96:17 – 98:7).

71.     In late 2011, concerns about Picarella's performance and time mismanagement in meetings led White to conclude that he could not attend meetings in Hedges' place. Ex. 122 (White Decl. ¶ 12); Ex. 14 (HSBC-ST00000410); Ex. 109 (Hedges 97:10-18).

72.     By early 2012, Hedges believed it was "common that Mike was unable to do his work appropriately" because "someone always had to help him with it" even though, as a senior vice president, "he should [have been] able to do things on his own." Ex. 109 (Hedges 79:22 – 80:7); Ex. 25 (HSBC-ST00003065).

73.     By early 2012, Hedges did not think that Picarella performed at the level of a senior vice president.  Ex. 109 (Hedges 80:8-13).

74.     By early 2012, HSBC executives, including Pizzimbono and Descamps, were aware that Picarella was underperforming.  Ex. 121 (Pizzimbono Decl. ¶ 8); Ex. 117 (Descamps Decl. ¶ 4); Ex. 109 (Hedges 41:12-16, 94:13 – 95:5, 99:16-24, 100:18-24, 101:14-21); Ex. 29 (HSBC-ST00004227).

75.     On February 7, 2012, Hedges wrote that Pizzimbono spoke to Hedges and suggested that she fire Picarella. Ex. 29 (HSBC_ST00004227); Ex. 109 (Hedges 98:18 – 99:3).

76.     In early 2012, Pizzimbono spoke with Descamps about Picarella.  Ex. 121 (Pizzimbono Decl. ¶ 6).

77.     In early 2012, Pizzimbono spoke to Descamps about the fact that Picarella was not performing at a senior vice president level.  Ex. 121 (Pizzimbono Decl. ¶ 6).

10

78.     Pizzimbono and Descamps discussed that Picarella was not meeting performance expectations and that they should consider making personnel changes to the Sales Business Management team.  Ex. 121 (Pizzimbono Decl. ¶ 6); Ex. 41 (HSBCPIC00001997); Ex. 29 (HSBC_ST00004227).

## V.     <u>Picarella's Performance Problems Continue</u>

79.     In February 2012, ███ complained that Picarella "organizes his meetings etc but when it comes down to doing work he doesn't really do it."  Ex. 28 (HSBCPIC00005059).

80.     On February 13, 2012, Hedges again noted that Picarella was "never at his desk." Ex. 30 (HSBCDLTDOC-0019773 at 74).

81.     On March 14, 2012, White complained to Hedges about Picarella's performance, writing that Picarella "isnt [sic] really capable of doing what we needed" and that "we just wont [sic] ask him to do risk type things."  Ex. 32 (HSBC-ST00003597); Ex. 109 (Hedges 102:15-19).

82.     White noted further that risk was not Picarella's "thing."  Ex. 32 (HSBC-ST00003597); Ex. 109 (Hedges 103:4-12); Ex. 122 (White Decl. ¶ 13).

83.     That same day, Hedges observed that White was "furious" at Picarella and that Pizzimbono "want[ed] him to quit."  Ex. 31 (HSBCDLTDOC-00021747); Ex. 109 (Hedges 39:12-19, 41:12-16).

84.     On March 23, 2012, Hedges stated she was "going to have a … talk" with Picarella because he was "not handling a lot."  Ex. 33 (HSBC-ST00005700); Ex. 109 (Hedges 83:17 – 84:17).

85.     That same day, ███ agreed with Hedges that "mike doesn't handle anythi[ng] [sic] bc he is not on th[e] desk he is walki[ng] around socializing."  Ex. 33 (HSBC-ST00005700); Ex. 109 (Hedges 83:17 – 85:15).

86. On April 16, 2012, ███████ observed that Picarella "is never ever on the desk."

Ex. 37 (HSBC-ST00003076); Ex. 109 (Hedges 86:3-19, 87:19 – 88:6).

87. Beginning in April 2012, Picarella repeatedly asserted in emails to Pizzimbono, White, and other senior employees that certain HSBC clients did not have Relationship Managers, in violation of HSBC policy.  Ex. 35 (HSBCPIC00004988); Ex. 121 (Pizzimbono Decl. ¶ 21); Ex. 63 (HSBCPIC00001786 at 87).

88. Picarella continued to raise these issues outside of the appropriate escalation chain even after he was told that his assertions were incorrect and based on inaccurate data.  Ex. 121 (Pizzimbono Decl. ¶ 21); Ex. 35 (HSBCPIC00004988); Ex. 63 (HSBCPIC00001786 at 87).

89. In April 2012, Pizzimbono informed Weiss that Picarella "was just not performing well in the role of SVP."  Ex. 121 (Pizzimbono Decl. ¶ 21); Ex. 41 (HSBCPIC00001997).

90. On that day, Pizzimbono also informed Weiss that another employee had reported to him "having issues with mike" and that Picarella "could not get things done."

Ex. 41 (HSBCPIC00001997); Ex. 121 (Pizzimbono Decl. ¶ 8).

**VI.   Picarella Complains about Hedges**

91. In the spring of 2012, Picarella approached Pizzimbono in Pizzimbono's office and asked if he could speak with him.  Ex. 121 (Pizzimbono Decl. ¶ 7).

92. Picarella complained to Pizzimbono that Hedges had behaved inappropriately.

Ex. 121 (Pizzimbono Decl. ¶ 7).

93. At the time, Pizzimbono did not understand Picarella to be complaining about the sexual harassment of a colleague.  Ex. 121 (Pizzimbono Decl. ¶ 7).

94.    Picarella met with Ellen Weiss on April 11, 2012 regarding "the behavior of Eileen

[Hedges] in general towards ███████ [Picarella] and others" and to "see if she could help."

Ex. 113 (Picarella 43:10-44:19); Ex. 36 (HSBCPIC-RIST00001535).

95.    On April 16, 2012, Picarella met with Weiss again regarding Hedges.  Ex. 38 (HSBCPIC-

RIST00001444).

96.    On that day, Weiss told Picarella that she would "prefer HR to get involved due to the

seriousness of the issues he had brought to [her] attention."  Ex. 38 (HSBCPIC-RIST00001444).

97.    During that meeting, Picarella brought up an incident relating to an inappropriate

comment made by Hedges regarding a trip to Asia that dated back to December 2011.  Ex. 38

(HSBCPIC-RIST00001444); Ex. 16 (Picarella000419).

98.    On April 18, 2012, Weiss initiated a meeting with Picarella regarding Hedges.

Ex. 39 (HSBCPIC00007026).

99.    On April 20, 2012, Picarella emailed Weiss regarding his "paranoia" that HSBC Legal

had mentioned his meetings with Human Resources to his co-workers.

Ex. 40 (HSBCPIC00005000).

100.   On April 26, 2012, Sue Jang, an HSBC Vice President in Human Resources, met with

Hedges to discuss Picarella's complaint.  Ex. 42 (HSBCPIC00002167).

101.   Jang did not disclose to Hedges that Picarella had lodged the complaint. Ex. 109 (Hedges

48:3-9, 49:14-20).

102.   Weiss was not present at any of Hedges' meetings with Human Resources regarding

Picarella's complaints.  Ex. 109 (Hedges 50:17-19).

103.   Weiss never discussed Picarella's complaints with Hedges.  Ex. 116 (Weiss 22:11-20,

28:14-19); Ex. 109 (Hedges 47:2-25).

104.    On June 25, 2012, Weiss again met with Picarella and asked him about his comments to

Pizzimbono regarding Hedges.  Ex. 44 (HSBCPIC-RIST00001196).

105.    Picarella stated he had several other examples of Hedges' inappropriate behavior.

Ex. 44 (HSBCPIC-RIST00001196).

106.    Human Resources investigated Picarella's additional allegations.  Ex. 116 (Weiss 76:25 –

77:13).

107.    On June 29, 2012, Weiss updated Picarella about the status of HSBC's investigation into

his complaints.  Ex. 45 (HSBCPIC-RIST00001263); Ex. 46 (HSBCPIC00001702).

108.    On July 24, 2012, Hedges was removed from her management role as a result of

Picarella's complaints.  Ex. 101 (Pl.'s Resp. to Def.'s 1st RFAs No. 3); Ex. 49 (HSBCPIC-

RIST00001030 at 30); Ex. 47 (HSBCPIC-RIST00002202); Ex. 108 (Descamps 9:23 – 10:11).

109.    HSBC also issued Hedges a final written warning.  Ex. 47 (HSBCPIC-RIST00002202);

Ex. 51 (HSBCPIC-RIST00002203).

110.    Hedges was also required to attend a day-long "1:1 training course with outside counsel"

that focused "on how behavior and poor judgment can lead to risk for both [HSBC] and [Hedges]

personally."  Ex. 47 (HSBCPIC-RIST00002202); Ex. 109 (Hedges 69:24 – 70:14).

111.    In addition, Hedges' performance rating and compensation were lowered.  Ex. 108

(Descamps 9:23 – 10:3).

112.    On July 24, 2012, Weiss met with Picarella and told him that Hedges had been removed

from her managerial role as a result of Picarella's complaints.  Ex. 48 (HSBCPIC00002005);

Ex. 49 (HSBCPIC-RIST00001030 at 30).

113.    Weiss also told Picarella that he would have a new manager with a "clean slate," and that

"he would be starting fresh."  Ex. 48 (HSBCPIC00002005).

114.    Pizzimbono and White were involved in and supported the decision to remove Hedges from her position as Head of Sales Business Management (Americas).  Ex. 121 (Pizzimbono Decl. ¶ 12); Ex. 122 (White Decl. ¶ 6).

**VII.    Semetulskis Replaces Hedges as Picarella's Direct Supervisor**

115.    Following the removal of Hedges from her managerial role, White served as Picarella's direct supervisor on a temporary basis from July 2012 through September 2012.  Ex. 122 (White Decl. ¶ 7).

116.    On July 30, 2012, Pizzimbono met with Picarella and explained that Hedges had been removed from her role, that the Sales Management group would be restructured, and that he would temporarily report to White.  Ex. 121 (Pizzimbono Decl. ¶ 13); Ex. 50 (HSBCPIC00006978).

117.    In the summer of 2012, White and Pizzimbono agreed that Semetulskis should be Hedges' replacement.  Ex. 122 (White Decl ¶ 8); Ex. 121 (Pizzimbono Decl. ¶ 14).

118.    Picarella was also considered for the role.  Ex. 122 (White Decl. ¶ 8); Ex. 121 (Pizzimbono Decl. ¶ 15).

119.    When White and Pizzimbono were considering candidates to replace Hedges, Semetulskis' two most recent HSBC performance reviews provided her a "2" rating, which placed her in the top twenty percent of HSBC employees.  Ex. 122 (White Decl. ¶ 11); Ex. 27 (HSBCPIC00012647 at 51); Ex. 76 (HSBCPIC00012653 at 58); Ex. 104 (HSBCPIC-RIST00003784 at slide 2).

120.    When White and Pizzimbono were considering candidates to replace Hedges, Picarella's most recent HSBC performance reviews provided him a "3" rating, which placed him in the middle seventy percent of HSBC employees and made him less qualified.  Ex. 122 (White Decl.

¶¶ 10, 11); Ex. 122 (Pizzimbono Decl. ¶ 16); Ex. 5 (HSBCPIC00000095 at 99);

Ex. 23 (HSBCPIC00000106 at 107); Ex. 104 (HSBCPIC-RIST00003784 at slide 2).

121.    White recommended—and Descamps approved— the hiring of Semetulskis based upon

her risk management background and the strength of her performance reviews.  Ex. 122 (White

Decl. ¶¶ 8-11); Ex. 117 (Descamps Decl. ¶ 7).

122.    Semetulskis worked as an Operational Risk Manager at HSBC, and had a "complete

background" and "experience" in operational risk.  Ex. 109 (Hedges 58:3-23); Ex. 120

(Semetulskis Decl. ¶¶ 1, 3).

123.    At the time, White and Pizzimbono perceived Picarella to be deficient in the area of

operational risk.  Ex. 32 (HSBC-ST00003597); Ex. 121 (Pizzimbono Decl. ¶ 16); Ex. 122 (White

Decl. ¶ 13).

124.    On or around September 5, 2012, White and Pizzimbono met with Picarella to discuss the

new restructuring plan for the Sales Management team, including Semetulskis' new role.

Ex. 121 (Pizzimbono Decl. ¶ 20); Ex. 122 (White Decl. ¶ 16).

125.    When White and Pizzimbono met with Picarella to discuss the new restructuring plan,

Picarella did not complain or express any displeasure about Semetulskis' promotion.

Ex. 52 (HSBCPIC00001937); Ex. 121 (Pizzimbono Decl. ¶ 20); Ex. 122 (White Decl. ¶ 16).

126.    On or around September 12, 2012, Semetulskis, who had very limited interactions with

Picarella prior to her promotion, had her first meeting with Picarella in her new role.

Ex. 57 (HSBCPIC00006981); Ex. 120 (Semetulskis Decl. ¶¶ 5, 7).

127.    At that meeting, Semetulskis asked Picarella for his input on how to restructure,

streamline, or better manage the Sales Management department.  Ex. 120 (Semetulskis

Decl. ¶ 7).

**VIII.** **Picarella's Poor Performance Continues Throughout 2012 and into 2013**

128.   On September 13, 2012, White met with Picarella regarding an email Picarella sent to multiple recipients, including senior management, in which he identified issues related to client suitability.  Ex. 122 (White Decl. ¶ 31(d)); Ex. 59 (HSBCPIC-RIST00002252 at 52).

129.   After reviewing the issues Picarella raised in his email and the response from Compliance, White and Compliance concluded that Picarella's email was inaccurate. Ex. 122 (White Decl. ¶ 31(d)); Ex. 53 (HSBCPIC00001780); Ex. 54 (HSBCPIC00005159).

130.   White explained to Picarella that it was important that he ensure his emails contain correct information.  Ex. 53 (HSBCPIC00001780).

131.   Following her discussion with Picarella, White observed that Picarella was "[o]verall not very impressive," that "Mike does not see himself part of the team and does not take ownership of the issues or the resolution."  Ex. 59 (HSBCPIC-RIST00002252 at 53).

132.   White observed further that Picarella was "quick to raise a problem before really understanding it but does not take the right approach to escalation or resolution." Ex. 59 (HSBCPIC-RIST00002252 at 53).

133.   On multiple occasions in 2012, Pizzimbono observed that Picarella repeatedly escalated an issue based upon incorrect information.  Ex. 121 (Pizzimbono Decl. ¶ 21).

134.   On September 20, 2012, Semetulskis asked Picarella to reconcile SalesBook (a data-management system) with the sales authority grid by the first week of October. Ex. 64 (HSBCPIC00023795); Ex. 120 (Semetulskis Decl. ¶ 9).

135.   This timeline afforded him over a week to complete the task. Ex. 64 (HSBCPIC00023795); Ex. 120 (Semetulskis Decl. ¶ 9).

136.    Picarella declined to take on the assignment as requested, stating that he was occupied

with other, unspecified tasks.  Ex. 64 (HSBCPIC00023795); Ex. 120 (Semetulskis Decl. ¶ 9).

137.    On September 24, 2012, White and Pizzimbono gave Picarella his mid-year 2012 review.

Ex. 121 (Pizzimbono Decl. ¶ 22); Ex. 122 (White Decl. ¶ 20); Ex. 66 (HSBCPIC00000100).

138.    Picarella received a rating of "3" in his mid-year 2012 review.

Ex. 66 (HSBCPIC00000100 at 104).

139.    Picarella's mid-year 2012 review noted that Picarella is "not always reliable to follow

through an issue to resolution."  Ex. 66 (HSBCPIC00000100 at 104); Ex. 113 (Picarella 193:3-

10).

140.    Picarella's mid-year 2012 review further noted:

> While there is evidence of issue escalation and identification, feedback was that
> you need to work on developing the skills required to resolve the problems.  It is
> also felt that you lack detailed knowledge of the Global Markets business.  We
> can assist with this point by providing training.

Ex. 66 (HSBCPIC00000100 at 104).

141.    Before giving Picarella his mid-year review for 2012, White asked him to provide a list

of individuals he had worked with at HSBC during the first half of 2012 who could offer

feedback on his performance.  Ex. 55 (HSBCPIC00051999); Ex. 122 (White Decl. ¶ 19).

142.    White contacted several individuals from that list to solicit their feedback on Picarella's

work performance for the first half of 2012.  Ex. 122 (White Decl. ¶ 19).

143.    These individuals came from a variety of roles and functions, including: co-workers in

compliance, Picarella's peers on the Business Management team, and senior members of the

Global Markets Management team.  Ex. 56 (HSBCPIC00001964); Ex. 58 (HSBCPIC00001958);

Ex. 60 (HSBCPIC00001932); Ex. 61 (HSBCPIC00001936); Ex. 62 (HSBCPIC-RIST00002780).

144.    A Senior Vice President in Equities Markets Americas stated that Picarella "can come across as abrasive and sometimes offensive, which gets in the way of getting results delivered with support functions as relationships tend to be strained."  Ex. 56 (HSBCPIC00001964).

145.    Another Senior Vice President in Global Markets stated that when working with Picarella, "on more than one occasion the root cause of the issue was not corrected and the same issue came up more than once."  Ex. 58 (HSBCPIC00001958).

146.    This Senior Vice President further stated that Picarella needed to "work on process, operational risk, and management skills, which are all an important part for him to get to the next level with the business managers team."  Ex. 58 (HSBCPIC00001958).

147.    A Managing Director and the Head of U.S. Credit Sales stated that Picarella was "unreliable," "lacked follow through on the projects we've worked on together," and that he did not "find him to be the go to professional we need in that role."  Ex. 60 (HSBCPIC00001932).

148.    A Senior Vice President in Fixed Income and Derivatives Compliance stated that Picarella needed to be "more familiar with the rules, materials and/or relevant procedures" for his work, and that "an SVP should be able to readily make these distinctions so that pertinent issues, key stake holders and appropriate solutions can be identified and implemented."  Ex. 61 (HSBCPIC00001936).

149.    A Managing Director and Head of U.S. Rate Sales for Global Banking & Markets stated that Picarella's work had "fits and starts," and that Picarella had contributed "little more than emails that ask for follow ups rather than understanding the issues and suggesting solutions, making the process more efficient, etc.  My criticism is as follows: there is a lack of understanding of the details needed to effectively challenge logistics functions (eg. credit, RM's market risk etc) – I find the help is limited in scope to e-mail chasers and organizing meetings –

19

the heavy lifting is left to sales to invest the time and effort to get these things through."
Ex. 62 (HSBCPIC-RIST00002780).

150.    This Managing Director further stated that he "would expect follow up and push from business management – but this does not happen.  More often than not this function seems to be more of another layer of compliance or monitoring rather than in place to help us work on the business."  Ex. 62 (HSBCPIC-RIST00002780).

151.    Picarella has no personal knowledge of direct evidence that any of the individuals who provided the feedback for his mid-year 2012 review harbored any retaliatory animus toward him. Ex. 113 (Picarella 199:13-15, 201:21 – 202:12, 202:21 – 203:14).

152.    In September 2012, Maria Malanga, an employee relations specialist within HSBC Human Resources, commenced an investigation regarding a complaint Picarella submitted to HSBC's "tipline."  Ex. 111 (Malanga 28:3-13).

153.    As part of her investigation, Malanga spoke with a number of Picarella's colleagues regarding Picarella's complaints.  Ex. 111 (Malanga 53:13-22, 117:11-14, 131:23 – 132:8).

154.    Malanga concluded that each of the issues Picarella identified that she investigated were not valid.  Ex. 111 (Malanga 122:25 – 123:15).

155.    Picarella's last complaint regarding Hedges' conduct was on October 11, 2012, in an email to Mary Bilbrey, head of Human Resources for HSBC USA.  Ex. 107 (Bilbrey 7:24 – 8:2, 80:12-14).

156.    At no point during the summer or fall of 2012 did Picarella complain about having fewer job responsibilities.  Ex. 122 (White Decl. ¶ 18).

157.    On October 5, 2012, Picarella emailed White that he had "zero capacity . . . actually in deficit," noting that he currently was "covering sales functions that ██████ and John Henry were

covering in addition to my normal job functions and DF and Suitability."

Ex. 68 (HSBCPIC00001790 at 90).

158.    On October 12, 2012, Picarella complained to Mary Bilbrey that he was "buried in

work."  Ex. 69 (Picarella002655); Ex. 113 (Picarella 115:19 – 116:12).

159.    During the same period, Picarella told Semetulskis that he was "over capacity and cannot

take on any additional responsibilities".  Ex. 67 (HSBCPIC00007877);

Ex. 65 (HSBCPIC00022294); Ex. 120 (Semetulskis Decl. ¶ 10).

160.    During the same period, Picarella asked Semetulskis to take on certain of his

responsibilities, including the sales authority approval process.  Ex. 71 (HSBCPIC00001907);

Ex. 120 (Semetulskis Decl. ¶ 11).

161.    Eventually, Semetulskis' time was overwhelmed by covering Picarella's responsibilities.

Ex. 71 (HSBCPIC00001907); Ex. 120 (Semetulskis Decl. ¶ 11).

162.    On February 13, 2013, a Managing Director in Institutional Investor Relationship

Management, emailed White that Picarella had begun cancelling meetings "on short / no notice

… even after repeated calls/emails/visits to Mike Picarella's desk".

Ex. 75 (HSBCPIC00001988).

163.    This Managing Director further informed White that it got to the point where the "Head

of Fund Due Diligence Team, protested repeatedly and began to refuse to have conversations

with Mike Picarella."  Ex. 75 (HSBCPIC00001988).

164.    On or around February 22, 2013, White and Semetulskis met with Picarella to follow up

on the comments he made in response to his mid-year 2012 review and to offer assistance in

learning how to get around the obstacles he stated were preventing his completion of certain

tasks.  Ex. 122 (White Decl. ¶ 26); Ex. 120 (Semetulskis Decl. ¶ 13).

165.    Picarella refused assistance or training and insisted that he did not need help.

Ex. 122 (White Decl. ¶ 26); Ex. 120 (Semetulskis Decl. ¶ 13).

166.    Picarella received a discretionary bonus of ▄▄▄▄ for the year 2012.  Ex. 101 (Pl.'s

Resp. to Def.'s 1st RFAs No. 8); Ex. 72 (HSBCPIC00005203).

167.    The Hedge Fund Governance Committee stopped meeting in 2013 and the

responsibilities of that Committee were transferred to a general on-boarding committee.

Ex. 121 (Pizzimbono Decl. ¶ 27); Ex. 75 (HSBCPIC00001988).

168.     On or around April 23, 2013, Picarella refused to take on a high-visibility assignment

from Semetulskis that entailed producing the institutional sales weekly commentary for senior

bankers in London and could have given Picarella valuable exposure to senior HSBC decision

makers.  Ex. 121 (Pizzimbono Decl. ¶ 23); Ex. 79 (HSBCPIC00010385 at 87).

169.    Picarella refused the assignment because he stated it would require work on the

weekends.  Ex. 79 (HSBCPIC00010385 at 87.)

170.    Picarella complained to Pizzimbono that "the request to work on weekends [was]

inappropriate" in light of his family responsibilities and because he has "a family weekend house

that [he uses] during the summer months."  Ex. 79 (HSBCPIC00010385 at 87.)

171.    Pizzimbono explained to Picarella that it was not necessary for the work to be completed

over the weekends.  Ex. 79 (HSBCPIC00010385 at 85.)

172.    Pizzimbono found that Picarella's reaction reflected a lack of understanding of what was

expected of employees at HSBC.  Ex. 121 (Pizzimbono Decl. ¶ 24).

173.    Pizzimbono believed that the expectation that HSBC employees work on weekends

particularly applied to senior employees, and Picarella was a Senior Vice President.

Ex. 121 (Pizzimbono Decl. ¶ 24).

174.    On May 13, 2013, Semetulskis and White gave Picarella his year-end 2012 review, in which he received a rating of "3".  Ex. 80 (HSBCPIC00000088 at 93); Ex. 120 (Semetulskis Decl. ¶ 14); Ex. 122 (White Decl. ¶ 23).

175.    Picarella's year-end 2012 review noted that "Mike could be more proactive and involved for example by increasing the timeliness of communication," and that he "should work towards helping to resolve the issues he raises."  Ex. 80 (HSBCPIC00000088 at 93).

176.    While she supervised him, Semetulskis observed that Picarella had a habit of escalating issues outside the established chain of command.  As a result, Semetulskis spent a substantial amount of time explaining and researching non-issues that Picarella raised outside the appropriate channels.  Ex. 120 (Semetulskis Decl. ¶ 16).

177.    For much of her tenure as Picarella's supervisor, Semetulskis observed that Picarella refused to speak to her in person and solely communicated to her by email, even when Semetulskis stood next to him and addressed him directly.  Ex. 120 (Semetulskis Decl. ¶ 15).

178.    During her time as Picarella's supervisor, Semetulskis felt that Picarella never accepted her as his supervisor and made her feel as though he was targeting her personally.  As a result of his repeated "adversarial and unprofessional behavior", she asked to no longer supervise Picarella.  Ex. 120 (Semetulskis Decl. ¶ 18).

179.    Semetulskis stopped supervising Picarella in May 2013.  Ex. 120 (Semetulskis Decl. ¶ 19).

180.    In April 2014, Semetulskis became Chief Operating Officer for Global Markets (Japan) at HSBC Tokyo.  Ex. 120 (Semetulskis Decl. ¶ 20).

181.    Based on her experience as his supervisor, Semetulskis thought that Picarella did not demonstrate the leadership and follow-through she would expect of a Senior Vice President at HSBC.  Ex. 120 (Semetulskis Decl. ¶ 17).

**IX.    Karam Replaces Semetulskis as Picarella's Direct Supervisor**

182.    In May 2013, White selected Michael Karam to replace Semetulskis as Picarella's supervisor.  Ex. 122 (White Decl. ¶ 28).

183.    Karam had previously been the Chief Operating Officer and Business Manager for Global Precious Metals at HSBC.  Ex. 110 (Karam 4:19 – 5:6, 7:16-23); Ex. 118 (Karam Decl. ¶ 1).

184.    In his new role, as of September 2014, Karam became the Head of Sales Business Management for Global Markets (Americas).  Ex. 110 (Karam 4:19 – 5:6, 7:16-23); Ex. 118 (Karam Decl. ¶ 1).

185.    White selected Karam because he was a superior performer with excellent management skills and a calm demeanor, and because White believed he could assist Picarella's professional development.  Ex. 122 (White Decl. ¶ 29).

186.    Karam had never worked directly with Picarella prior to May 2013.  Ex. 118 (Karam Decl. ¶ 2).

187.    Karam viewed his and Picarella's interests as being aligned.  Ex. 118 (Karam Decl. ¶ 3).

188.    During his first months as Picarella's supervisor, Karam worked extensively with Picarella to ensure that he understood and agreed with his objectives.  Ex. 118 (Karam Decl. ¶ 4).

189.    In the summer and fall of 2013, Karam held regular "catchup meetings" with Picarella to discuss any issues or concerns Picarella had, including issues he had executing the tasks expected of him.  Ex. 110 (Karam 121:4 – 122:5); Ex. 118 (Karam Decl. ¶ 14).

190.   On May 21, 2013, Karam asked Picarella to address the Client On-Boarding Committee meeting regarding account closures for 310 clients and "RM sponsorship" for 24 new clients. Ex. 81 (HSBCPIC00005167 at 69).

191.   On June 27, 2013, Picarella filed a Charge of Discrimination against HSBC with the Equal Employment Opportunity Commission.  Ex. 82 (HSBCPIC00000311).

192.   On September 27, 2013, Karam and Picarella met to discuss and confirm Picarella's role as an "SVP" in the "Business Manager/COO community," and the corresponding "responsibilities expected" of him.  Ex. 83 (HSBCPIC00004965); Ex. 110 (Karam 103:8-15, 105:4 – 110:12).

193.   Karam emailed Picarella that as "a senior member of the team," the "minimum expected" from Picarella included the responsibilities he listed.  Ex. 83 (HSBCPIC00004965).

194.   Karam stated further that "from time to time there [would] be additional responsibilities" and that it was "incumbent upon [him] to be pro active [sic] to embrace those opportunities as a senior member of the team."  Ex. 83 (HSBCPIC00004965).

**X.      Picarella's Performance Further Deteriorates**

195.   During his time as Picarella's supervisor, Karam observed that Picarella demonstrated a clear lack of understanding about HSBC's business, including failing to understand HSBC's suitability obligations under FINRA.  Ex. 118 (Karam Decl. ¶ 8).

196.   Karam therefore concluded that Picarella was ill-equipped to handle what was a significant portion of his job duties.  Ex. 118 (Karam Decl. ¶ 8).

197.   In late 2013 and early 2014, Karam observed that Picarella "failed" to adequately coordinate HSBC's participation in the Greenwich Survey, an important industry survey to

HSBC.  Ex. 87 (HSBCPIC00001188); Ex. 110 (Karam 53:6 – 55:22); Ex. 118 (Karam

Decl. ¶ 11).

198.    In late 2013, Karam observed that HSBC "actually missed the cutoff" for the Greenwich

Survey as a result of Picarella "being unresponsive" and, in order to complete the Survey, other

employees were required "to step in and fill in a gap where [Picarella] had failed."  Ex. 110

(Karam 54:18 – 55:10); Ex. 118 (Karam Decl. ¶ 11).

199.    Karam further observed that Picarella "infused a tremendous amount of confusion" and

"required a lot of hand holding . . . to get to the finish line" in his responsibility to coordinate the

Greenwich Survey.  Ex. 110 (Karam 53:6 – 55:22).

200.    On September 27, 2013, Karam identified the "Monthly GMB Submission" as one of the

"responsibilities expected of [Picarella's] role."  Ex. 83 (HSBCPIC00004965).

201.    In the first six months of 2014, Karam observed that Picarella did not reliably solve

issues related to the monthly GMB submission as Karam would expect of a senior vice president.

Ex. 110 (Karam 38:6-22, 41:18-23, 42:15-21); Ex. 118 (Karam Decl. ¶ 10).

202.    HSBC employees relied upon the monthly GMB submission.  Ex. 110 (Karam 39:3-10,

39:15 – 40:5); Ex. 118 (Karam Decl. ¶ 10).

203.    On December 10, 2013, Picarella received his mid-year 2013 review.

Ex. 84 (HSBCPIC00000122).

204.    Picarella received a rating of "3" in his mid-year 2013 review.

Ex. 84 (HSBCPIC00000122 at 125).

205.    Karam completed Picarella's mid-year 2013 review.  Ex. 118 (Karam Decl. ¶ 5).

206.    Picarella's mid-year 2013 noted that the responsibilities Picarella had assumed "fall short

of those that are typically expected of a SVP in the COO/Business Manager's role," and that "[i]t

is important for Mike to complete all delegated training (Compliance and other) within the prescribed time lime [sic]. Any breaches will have a negative impact on his rating."

Ex. 84 (HSBCPIC00000122 at 125).

207. On December 11, 2013, Picarella bypassed his direct manager, Karam, to discuss an issue related to "give-up" accounts directly with Pizzimbono. Ex. 85 (HSBCPIC00025182).

208. Picarella failed to perform the work required to resolve the issues related to the "give-up" accounts. Ex. 110 (Karam 51:11 – 52:20); Ex. 119 (Karam Decl. ¶ 9).

209. Karam completed Picarella's year-end 2013 review. Ex. 88 (HSBCPIC00000127); Ex. 118 (Karam Decl. ¶ 5).

210. On May 16, 2014, Karam discussed Picarella's year-end 2013 review with him. Ex. 88 (HSBCPIC00000127 at 27).

211. In his year-end 2013 review, Picarella received a rating of "3". Ex. 88 (HSBCPIC00000127 at 29).

212. Picarella's year-end 2013 review noted that Picarella "has demonstrated a weakness in proactively devising meaningful solutions to tasks which has required intervention and guidance that should have been unnecessary." Ex. 88 (HSBCPIC00000127 at 29).

213. Picarella received a discretionary bonus of ████ for the year 2013. Ex. 101 (Pl.'s Resp. to Def.'s 1st RFAs No. 9); Ex. 86 (HSBCPIC00005207).

214. Every HSBC employee is required to set annual objectives. Ex. 114 (Picarella 382:9-18).

215. In or about May 2014, Karam asked Picarella to set his annual objectives for 2014. Ex. 114 (Picarella 383:3-13).

216. On September 22, 2014, Karam emailed Picarella asking him to finalize his objectives. Ex. 114 (Picarella 386:20 – 387:9).

217.    Picarella did not finalize his objectives by the deadline Karam set in his September 22

email.  Ex. 114 (Picarella 388:14-23).

218.    As of October 7, 2014, Picarella had not finalized his objectives.  Ex. 114 (Picarella

389:5-24).

219.    On or about November 21, 2014, Karam discussed Picarella's mid-year 2014 review with

him.  Ex. 89 (HSBCPIC00000079 at 79); Ex. 114 (Picarella 396:18-23).

220.    In his mid-year 2014 review, Picarella received a rating of "Off-track."

Ex. 89 (HSBCPIC00000079 at 84).

221.    At this time, HSBC's rating system had changed to an "On-track" versus "Off-track"

system for mid-year reviews.  Ex. 119 (Shawke Decl. ¶ 3); Ex. 103 (HSBCPIC00051938).

222.    An "On-track" rating means that the employee (a) meets or exceeds performance and

behavioral expectations, (b) is likely to receive a Good, Strong or Top Performer year-end

performance rating, and (c) is likely to receive a Strong or Role Model year-end behavior rating.

Ex. 119 (Shawke Decl. ¶ 4); Ex. 103 (HSBCPIC00051938).

223.    An "Off-track" rating means that the employee (a) failed to meet expectations in terms of

performance or behavior, (b) is likely to receive an Inconsistent Performer year-end performance

rating, and (c) is likely to receive a Weak or Unacceptable year-end behavior rating.

Ex. 119 (Shawke Decl. ¶ 5); Ex. 103 (HSBCPIC00051938).

224.    As of June 1, 2014, 90% of employees were expected to be "On-track" as of their mid-

year review.  Ex. 105 (HSBCPIC00051939 at 47); Ex. 119 (Shawke Decl. ¶ 7).

225.    Picarella's mid-year 2014 review noted that "[a] common theme is one where [Picarella]

is elusive, doesn't take ownership of his work and lacks initiative."  Ex. 89 (HSBCPIC00000079

at 84).

226.    Picarella's mid-year 2014 review further noted:  "Mike's lack of initiative, lack of productivity and refusal to take ownership for strategically defining his role or his work is contrary to his GCB level and is significantly below the performance of his peers."  Ex. 89 (HSBCPIC00000079 at 84).

227.    In 2014, Picarella did "HSBC-related work less than 10 percent of the time [he was] at the office".  Ex. 114 (Picarella 389:25 – 390:4).

228.    Instead, he used that time for "different things [he] needed to take care of in [his] personal life", to speak with "friends in the building" and to "read the news on the internet."  Ex. 114 (Picarella 390:5-13).

229.    Picarella did not receive a discretionary bonus for the year 2014.  Ex. 101 (Pl.'s Resp. to Def.'s 1st RFAs No. 10).

230.    While he supervised Picarella, Karam observed that Picarella was rarely at his desk and getting a hold of him was exceedingly difficult.  Ex. 118 (Karam Decl. ¶ 12).

231.    At times, Karam would notice Picarella sitting alone in a dark conference room, having what appeared to be private conversations on his personal cell phone.  Ex. 118 (Karam Decl. ¶ 12).

232.    While he supervised Picarella, Karam observed that Picarella's emails were often confrontational, aggressive, and accusatory, and that he lacked the communication skills required of a senior vice president.  Ex. 118 (Karam Decl. ¶ 13).

233.    Karam believes that Picarella was not a competent senior vice president, that he proved unable to fix problems someone at his level should have been able to address, and that he consistently performed far below the level expected of an HSBC employee with that title.  Ex. 118 (Karam Decl. ¶ 7).

**XI.** **Picarella Is Placed on Paid Administrative Leave**

234. ███████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████████

235. ███████████████████████████████████████████████████
██████████████████████████████████████████████████████████
████████████████████████████████████

236.    Picarella did not check his work emails on his HSBC-issued device between November

26, 2014 at approximately 4:45pm and December 1, 2014 at 9:00am.  Ex. 101 (Pl.'s Resp. to

Def.'s 1st RFAs No. 26).

237. ███████████████████████████████████████████
██████████████████████████████████████████████████
████████████████████████████████████
████████████████

238. ██████████████████████████████████████████████████
██████████████████████████████████████████████
█████████████████████

239.    In late 2014 or early 2015, Picarella recorded a conversation between himself and two

HSBC Human Resources officers without their knowledge or consent despite knowing that

HSBC has "a policy regarding recording conversations."  Ex. 114 (Picarella 228:6 – 229:23).

240.    On January 13, 2015, Daniel Silber, Head of Institutional Sales for Global Markets (Americas) at HSBC, led an internal sales team call.  Ex. 100 (Joint Stipulations dated May 14, 2015 ("Joint Stipulations") ¶ 2).

241.    The call included a confidential briefing by HSBC counsel and was potentially privileged.  Ex. 108 (Descamps 36:5-18).

242.    Picarella dialed into the call from home.  Ex. 100 (Joint Stipulations ¶ 6).

243.    The following day, Silber received a phone call from a reporter who had previously reported on Picarella and Karam's meeting about Picarella's 2014 mid-year review, asking questions regarding information the reporter asserted Silber provided on the internal sales team call.  Ex. 100 (Joint Stipulations ¶ 2); Ex. 108 (Descamps 36:20-24).

244.    HSBC initiated an investigation to determine whether an employee disclosed internal information to the reporter or other third party in violation of HSBC policy.  Ex. 100 (Joint Stipulations ¶ 2); Ex. 96 (HSBCPIC00005260).

245.    By letter dated January 15, 2015, HSBC notified Picarella's counsel that Picarella would be placed on paid administrative leave pending an investigation into his involvement in the leak of confidential HSBC information to a third party.  Ex. 93 (Ltr. from D. Marshall to J. Hubbard (Jan. 15, 2015)).

246.    ██████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████

247.   

248.

249.   HSBC's investigation concluded that Picarella or someone associated with him was "highly likely the source" of the leaked information, "either directly or indirectly." Ex. 95 (HSBCPIC00005259).

**XII.   HSBC Terminates Picarella's Employment for Poor Performance**

250.   In March 2015, at a meeting with Descamps and Susan Roskell, Head of Human Resources for Global Banking and Markets and Private Banking (Americas), Karam recommended that HSBC terminate Picarella's employment on the basis of his performance record.  Ex. 108 (Descamps 48:12 – 49:4); Ex. 110 (Karam 80:6-81:10); Ex. 95 (HSBCPIC00005259).

251.   Karam recommended that Picarella's employment be terminated based on his "off-track" mid-year review and the fact that "through the end of the year, nothing improved and there were further instances and examples of additional failures and weaknesses that were identified."  Ex. 110 (Karam 80:22 – 81:10).

252.   Descamps approved the termination of Picarella's employment.  Ex. 108 (Descamps 49:13-17); Ex. 110 (Karam 80:12-17).

253.    By letter dated March 26, 2015, and signed by Roskell, Picarella was notified that his employment at HSBC was terminated "due to [his] significant performance issues which have been previously discussed with [him]."  Ex. 95 (HSBCPIC00005259).

254.    Prior to sending this letter, Karam and Human Resources attempted to inform Picarella of the termination of his employment by telephone on March 26, 2015.  Ex. 115 (Roskell 32:6-23).

**XIII.   Additional Relevant Facts**

255.    Picarella's salary never decreased while he worked at HSBC.  Ex. 101 (Pl.'s Resp. to Def.'s 1st RFAs No. 6).

256.    Picarella's position and title remained Senior Vice President throughout his tenure at HSBC.  Ex. 122 (White Decl. ¶ 15); Ex. 121 (Pizzimbono Decl. ¶ 19).

257.    Picarella's job responsibilities remained substantially the same throughout his employment.  Ex. 122 (White Decl. ¶ 18); Ex. 121 (Pizzimbono Decl. ¶¶ 19, 26).

258.    Picarella complained to Human Resources numerous times in late 2012 and 2013:

    a)   On October 17, 2012, Picarella complained to Malanga that two HSBC administrative assistants were "huddling up", and suggested that HSBC search their SameTime chats. Ex. 70 (Picarella000432).

    b)   On January 16, 2013, Picarella complained to Bilbrey about an administrative assistant and trader who allegedly said he was "too much Morgan Stanley". Ex. 73 (Picarella002802).

    c)   A day later, Picarella complained to Bilbrey that two unnamed senior managers allegedly made inappropriate comments to him at the elevator banks. Ex. 74 (HSBCPIC00012866).

d)  On March 13, 2013, Picarella complained to Bilbrey about an administrative assistant
    who allegedly accused Picarella of trying to trip her and of stealing from her desk drawer.
    Ex. 77 (HSBCPIC00007337 at 42).

e)  On the same date, Picarella also complained to Bilbrey about a trader who allegedly
    looked at Picarella's computer and desk "throughout the day".
    Ex. 77 (HSBCPIC00007337 at 42).

f)  On April 11, 2013, Picarella complained to Bilbrey that Semetulskis "hums, sings, laughs
    and talks to herself out loud" and that this was "very distracting."
    Ex. 78 (Picarella002941 at 41).

259.    Picarella has no personal knowledge of direct evidence that Hedges harbored any
retaliatory animus toward him.  Ex. 113 (Picarella 141:23 – 142:12, 204:25 – 205:7).

260.    Picarella has no personal knowledge of direct evidence that Semetulskis harbored any
retaliatory animus toward him.  Ex. 114 (Picarella 237:22 – 238:10).

261.    Picarella has no personal knowledge of direct evidence that Karam harbored any
retaliatory animus toward him.  Ex. 114 (Picarella 238:11-17).

262.    Picarella has no personal knowledge of direct evidence that Weiss harbored any
retaliatory animus toward him.  Ex. 113 (Picarella 205:8-20).

263.    Picarella has no personal knowledge of direct evidence that Pizzimbono harbored any
retaliatory animus toward him.  Ex. 113 (Picarella 208:25 – 209:9).

264.    Picarella has no personal knowledge of direct evidence that Roskell harbored any
retaliatory animus toward him.  Ex. 114 (Picarella 244:18 – 245:5).

265.    Picarella has no personal knowledge of direct evidence that Mary Jo Rogers harbored any
retaliatory animus toward him.  Ex. 113 (Picarella 206:16 – 207:2).

266.    Picarella has no personal knowledge of direct evidence that Kutas harbored any retaliatory animus toward him.  Ex. 114 (Picarella 238:18 – 239:13).

267.    Karam never had any incentive to retaliate against Picarella for reporting sexual harassment.  Ex. 118 (Karam Decl. ¶ 6).

268.    When Descamps first learned that Picarella had complained to HSBC Human Resources, he was not made aware of the details of the complaint, and he assumed it related to Hedges' treatment of Picarella.  Ex. 117 (Descamps Decl. ¶ 5).

269.    Pizzimbono first became aware that Picarella had complained to Human Resources about Hedges allegedly sexually harassing ▮▮▮ when he reviewed the complaint Picarella filed in this action.  Ex. 121 (Pizzimbono Decl. ¶ 17).

270.    White first became aware that Picarella had complained to Human Resources about the alleged sexual harassment of ▮▮▮ in the winter of 2015 when she read the complaint Picarella filed in this action.  Ex. 122 (White Decl. ¶ 4).

271.    Picarella admits that he had not complained of sexual harassment prior to February 2012.  Ex. 113 (Picarella 13:4-7).

Dated: June 12, 2015

/s/ Damien J. Marshall

Damien J. Marshall
Camille Oberkampf
Ilana Miller
Joshua J. Libling
BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue
New York, New York 10022
Phone: (212) 446-2300
dmarshall@bsfllp.com
coberkampf@bsfllp.com
imiller@bsfllp.com
jlibling@bsfllp.com

Eugene Scalia
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, NW
Washington, District of Columbia 20036
Phone: (202) 955-8206
Facsimile: (202) 530-9606
escalia@gibsondunn.com

*Attorneys for HSBC Securities (USA) Inc.*

36