| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK | USDC SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC#: _____<br>DATE FILED: 4-5-16 |

------------------------------------------------------------x
Michael Picarella,
                           Plaintiff,

                1:14-cv-4463

      -against-

HSBC (USA) Securities, Inc.,
                           Defendant.
------------------------------------------------------------x
James Rist,
                           Plaintiff,

                1:14-cv-6503

      -against-                **ORDER**

HSBC (USA) Securities, Inc.,
                           Defendant.
------------------------------------------------------------x

**ANDREW L. CARTER, JR., United States District Judge:**

In this pair of related suits, Michael Picarella and James Rist each accuse their former employer, HSBC (USA) Securities, Inc. ("HSBC"), of retaliating against them after they reported the sexual harassment of a coworker. Both allege violations of Title VII of the Civil Rights Act, the New York State Human Rights Law, and the New York City Human Rights Law. HSBC moved for summary judgment on all claims. Its motions are DENIED because disputed issues of material fact remain.

In considering a summary judgment motion, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir.1986) (citing Anderson, 477 U.S. at 248). "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." Jeffreys v. City of New York, 426 F.3d

549, 553-54 (2d Cir. 2005) (internal quotations removed). On the evidence submitted here, drawing reasonable inferences against HSBC and leaving credibility assessments to the jury, disputed issues of fact remain in both cases.

To state a *prima facie* case for retaliation, a plaintiff must show: "(1) that she participated in an activity protected by Title VII, (2) that her participation was known to her employer, (3) that her employer thereafter subjected her to a materially adverse employment action, and (4) that there was a causal connection between the protected activity and the adverse employment action." Kaytor v. Elec. Boat Corp., 609 F.3d 537, 552 (2d Cir.2010). "The plaintiff's burden in this regard is *de minimis*, and the court's role in evaluating a summary judgment request is to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive." Hicks v. Baines, 593 F.3d 159, 164 (2d Cir. 2010) (internal quotations removed).

Rist meets his de minimis burden to establish a causal connection between protected activity and adverse employment actions. The close temporal proximity between the July 2012 sexual harassment complaint he claims he made to Human Resources ("HR") representative Jennifer Whang and his subsequent July 2012 removal from weekly meetings and August 2012 downgraded performance review is sufficient to establish prima facie causation. See Kaytor v. Elec. Boat Corp., 609 F.3d 537, 552 (2d Cir. 2010) ("Close temporal proximity between the plaintiff's protected action and the employer's adverse employment action may in itself be sufficient to establish the requisite causal connection between a protected activity and retaliatory action.").

Moreover, Whang disclosed to Rist's supervisors in January 2013 that he had reported

2

retaliation. Though she testified that at the time of her disclosure she "had not heard anything about sexual harassment," her credibility on the issue is challenged by Rist's testimony that he spoke of the sexual harassment with Whang in July 2012. It is for a jury to decide whose version of the events they believe, but drawing an inference in Rist's favor, his direct supervisors learned of the sexual harassment reports in January 2013 and issued a negative performance review with a questionably revised calculation of a monetary goal they claimed Rist failed to meet in February 2013. They also cut his bonus compensation by 60% that same month. That close temporal proximity further supports a finding of prima facie causation.

Finally, to the extent HSBC argues that Rist's July 2012 complaint is the only touchstone by which to measure temporal proximity to adverse employment actions, it is mistaken. Rist also engaged in protected activity by complaining to HR of retaliatory threats from Suzy White in October 2012, of retaliatory reassignment of client accounts on October 17 and 24 of 2012, and of retaliatory actions by supervisor Warren McCormick in April and May of 2013. Additional protected activity occurred when Rist filed an Equal Employment Opportunity Commission ("EEOC") Charge of Discrimination in August 2013 and spoke with HR about his retaliatory complaints on January 28, 2014. In close temporal proximity to these activities, Rist claims that he was continually excluded from meetings and removed from accounts that were necessary for adequate performance in his job, assigned nonsubstantive administrative tasks, and punished with negative reviews that purposefully imposed impossible goals given his removal from meetings and accounts.

Whether HSBC acted for legitimate and nondiscriminatory reasons in subjecting Rist to adverse employment actions is also a disputed issue of material fact. Rist presents evidence that

3

HSBC's proffered reasons are pretexual, including the October 2012 conversation with Suzy White in which she claimed that subsequent to his report of a coworker's sexual harassment, "everyone wanted to have you fired," as well as HR's request to his managers to keep performance records on Rist after discussions about his retaliation complaint, testified to at Whang's deposition. Moreover, evidence exists that even with added burdens of removal from meetings and transfer to other employees of client responsibilities, Rist generated more revenue than the colleague to whom several of his client accounts were transferred. If the jury credits Rist's account, they could conclude that the adverse actions here were "more likely than not based in whole or in part on discrimination, and that the unlawful retaliation would not have occurred but-for the alleged wrongful actions." Kirkland v. Cablevision Sys., 760 F.3d 223, 227 (2d Cir. 2014) (internal quotations and citations removed).

Finally, the significant reduction in Rist's compensation, combined with his exclusion from work responsibilities and hostile treatment from management staff, raises a question of material fact as to whether his working conditions, "when[] viewed as a whole . . . [were] so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." Terry v. Ashcroft, 336 F.3d 128, 152 (2d Cir. 2003) (internal quotations removed).

Disputed questions of fact also exist in Picarella's case. As with Rist, evidence of close temporal proximity between Picarella's complaints of sexual harassment and retaliatory behavior and allegedly adverse actions satisfies his de minimis burden to state a prima facie case of retaliation. In November 2011, Picarella complained to a Chief Operating Officer of harassment by his supervisor Eileen Hedges after she exposed one of her breasts to both him and a coworker.

4

In February and March of 2012 he complained directly to Hedges of her sexual harassment of that coworker and in March he complained of the same to Pablo Pizzimbono, the Head of Sales for Global Markets. On or about June 28, 2012, HR questioned Picarella on the coworker's sexual harassment by Hedges and he complained of additional harassing behavior by her. In July 2012, Picarella complained to HR that Hedges had been informed of his sexual harassment complaints, despite having earlier indicated to him that the complaint was to remain confidential. Picarella met with HR three additional times throughout July to address his complaints, the last time on July 26.

Barely two months later, on September 5, 2012, Picarella was informed that he would not be awarded a promotion that conflicting evidence indicates may have been promised to him in his 2011 employment interview with HSBC. The position was instead given to another employee, whose qualifications the parties dispute. On September 12 Picarella claims that Suzy White began to rescind material job responsibilities of his and reassign them to other employees. Picarella then complained to HR of both retaliation and additional episodes of sexual harassment of a coworker in September and October 2012. Shortly thereafter, as of December 2012, he was excluded from work meetings and client planning sessions he had previously attended. Around that time, his name was also removed from a departmental organizational chart by order of Hedges and Pizzimbono's assistant, who told the employee responsible for the chart that Picarella "won't be working here any longer."

In January 2013, Picarella once more complained to HR about retaliation for reporting sexual harassment and in February his role as a committee chair was rescinded. March and April 2013 saw further complaints to HR about retaliation and in June 2013 Picarella filed a Charge of

5

Discrimination with the EEOC. In July and August 2013 Picarella claims that he was stripped of more material responsibilities, including client exit approval, responsibility for new client business cases, and coordination of client survey results. In September 2013, Picarella complained to HR about retaliation by his direct supervisor, Michael Karam. Throughout 2014, Picarella and Karam had a tense relationship in which Picarella complained of diminished responsibilities and Karam accused him of insubordination. In June 2014, Picarella filed this lawsuit alleging employment discrimination. On November 21, 2014 Karam gave Picarella a negative performance review. Picarella complained to HR that Karam acted in a physically aggressive manner that day and HR requested by email that he work from home pending investigation of the incident. Picarella's security pass to HSBC's offices was disabled and he was not provided remote electronic access to HSBC systems until December 18.

On January 13, 2015 Picarella attended a work conference by telephone led by HSBC's Head of Markets for Institutional Sales (Americas), Daniel Silber. The next day, a reporter contacted Silber inquiring about information shared at the telephone conference. HSBC identified Picarella as the possible source of the leak and, after an investigation, concluded that it was highly likely that either he or someone he associated with was the source. HSBC terminated Picarella's employment in March 2015 by letter, due both to claimed performance issues and the results of its investigation into the leak.

Drawing inferences against HSBC, the numerous adverse actions Picarella claims he was subjected to, taken on the heels of regular complaints of harassment and retaliation, make out a prima facie case of discrimination. Moreover, Picarella presents evidence of retaliatory animus in the form of comments made by Hedges in 2012 that he would not be employed with HSBC

6

much longer, as well as emails authored by Karam in which Picarella was referred to as "the hr related problem" and Karam discussed "marginaliz[ing] his behavior" with another supervisor. Temporal proximity and evidence of retaliatory animus together suffice for Picarella to meet his de minimis causation burden.

An issue of material fact also exists as to whether HSBC's claimed reasons for subjecting Picarella to adverse actions were pretextual. Viewed in the light most favorable to Picarella, record evidence indicates that Picarella consistently received both discretionary bonuses, a marker of acceptable performance, and reviews that characterized his performance as "Strong." His first review with a less than "Strong" rating came from Karam in late 2014. Karam's retaliatory animus is at issue, however, given the comments attributed to him above.

Additional evidence challenges whether HSBC's had legitimate reasons for terminating Picarella. Didier Descamps, former Co-Head of Global Markets at HSBC, admitted at deposition that no proof was available about where the leak to a reporter came from, so the decision to terminate Picarella was based entirely on his poor performance. That admission contrasts with Picarella's termination letter, demonstrating a "contradiction[] in the employer's proffered legitimate, nonretaliatory reasons for its action," making it possible for a rational juror to find pretext. Zann Kwan v. Andalex Grp. LLC, 737 F.3d 834, 846 (2d Cir. 2013).

Finally, both Rist and Picarella present evidence of retaliation for complaining of the same sexual harassment of the same coworker. Each plaintiff's evidence in turn helps both make out their prima facia cases and dispute HSBC's legitimate reasons for engaging in adverse employment actions, because a rational juror could base a finding of discrimination in part on evidence of a similar pattern of discrimination against the other plaintiff.

7

The presence of these disputed issues of material fact makes summary judgment in both cases inappropriate. The Court therefore denies the motions and orders a scheduling conference to set trial deadlines on April 12, 2016 at 3:30 p.m. Counsel for the parties should report to Courtroom 1306 at the Thurgood Marshall U.S. Courthouse, 40 Foley Square, New York, NY 10007.

**SO ORDERED.**

Dated: April 4, 2016
New York, New York

                                                                       _____
                                                                       **ANDREW L. CARTER, JR.**
                                                                       **United States District Judge**