# LIDDLE & ROBINSON, L.L.P.

800 THIRD AVENUE
NEW YORK, N.Y. 10022

(212) 687-8500
FACSIMILE: (212) 687-1505
E-MAIL: jhubbard@liddlerobinson.com
www.liddlerobinson.com

BLAINE H. BORTNICK
JAMES W. HALTER
JAMES R. HUBBARD
JEFFREY L. LIDDLE
CHRISTINE A. PALMIERI
MATTHEW J. MCDONALD

COUNSEL
READ K. MCCAFFREY*
HON. MELVIN L. SCHWEITZER

SHERRY M. SHORE
ROBERT L. ADLER
KRISTA E. BOLLES
ATOOSA N. ESMAILI
ASA F. SMITH

*ADMITTED IN THE
DISTRICT OF COLUMBIA,
MARYLAND & MASSACHUSETTS

December 1, 2016

VIA ECF

The Honorable Andrew L. Carter, Jr.
United States District Judge
United States District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square, Room 435
New York, New York 10007

Re:   Michael Picarella v. HSBC (USA) Securities Inc.,
      No. 14-CV-4463 (ALC)(AJJP)

Dear Judge Carter:

We represent the plaintiff, Michael Picarella ("Picarella"), in the above-captioned matter and write to respond to the November 29, 2016 letter submitted by defendant, HSBC (USA) Securities Inc. ("HSBC") seeking leave to file a motion for discovery sanctions. Defendant's application is entirely without merit.

First, defendant's last minute request is grossly untimely, and for that reason highly prejudicial. Discovery closed in late May, 2015. Picarella was deposed a third time on the issue of job search post-termination, and Mr. Rathjen, a former co-worker at HSBC, was listed in September as a "character" witness, both by consent. HSBC made no mention of any document preservation or production issue in the November 29 final pre-trial conference, even when the Court asked whether parties had any other matters that needed to be discussed as the hearing closed. Instead, HSBC chose to file and serve its letter application at 8:49 PM that evening, with three business days remaining before trial.

LIDDLE & ROBINSON, L.L.P.

The Honorable Andrew L. Carter, Jr.        -2-                    December 1, 2016

      The relevant mitigation documents – over one thousand pages – were produced in late October. Picarella's deposition took place on November 1, and Defendant had access to the transcript as early as November 7. Mr. Rathjen's deposition took place on November 16, after he had produced a few innocuous emails with Picarella regarding a friend's resume, and house repairs after Hurricane Sandy. HSBC has no excuse for waiting until the eleventh hour to file this motion, when the parties are engaged full-time in witness and trial preparation, and failing to air the issue before the Court at the pre-trial conference.

      Second, as HSBC well knows, no spoliation has occurred. HSBC is thus not entitled to sanctions of any kind, much less an adverse inference instruction. "A party seeking an adverse inference instruction (or other sanctions) based on the spoliation of evidence must establish the following three elements: (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a 'culpable state of mind'; and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 220 (S.D.N.Y. 2003). As discussed herein, HSBC cannot satisfy this burden and thus no motion should be allowed.

**All Relevant Documents Concerning Picarella's Mitigation Efforts
Have Been Preserved and Produced**

      Picarella has produced hundreds of documents reflecting his efforts to mitigate his damages by finding new employment, including a job search log containing 297 entries. The "unique evidence of Picarella's efforts to find employment" that HSBC claims has been destroyed were simply post-it notes on which Picarella testified he may have jotted down names and phone numbers of recruiters and other contacts. The actual communications with those individuals, as well as their contact information, have been produced. There is thus nothing "unique" about any post-it notes that may have existed. In addition, Picarella explained his failure to retain the post-it notes, if any – he testified that "I reflected [the information] on here [the job search log], anything that I had." (Tr. 53-54) Such conduct is not sanctionable, and Greene v. Netsmaret Techs., Inc., 2011 WL 2225004 (E.D.N.Y. Feb. 28, 2011), cited by defendant, does not provide otherwise. In that case, no sanctions were imposed for the destruction of notes and recordings that were subsequently transferred and produced, and there was "no evidence that any unique evidence was lost." Id. at *8. Instead, the court imposed monetary sanctions to reimburse the defendant for the costs of obtaining substantial relevant documents that had not been timely produced. That situation does not exist here.

      Also, as I advised defendant's counsel by letter of November 11, 2016, Picarella testified that he did not search the family computer for job search materials because he did not put any job search information on it, other than a resume, which was produced. The fact that he did not search his trash folder or preserve its contents is also irrelevant because he segregated all job-search e-mails for production in his in-box and sent-box, sending none to

LIDDLE & ROBINSON, L.L.P.

The Honorable Andrew L. Carter, Jr.　　　-3-　　　　　　　　December 1, 2016

the trash. There is simply no evidence that Picarella did not produce all documents concerning his mitigation efforts. His testimony that he "may have missed something" in response to questions as to whether all responsive documents were produced simply reflects an inability to confirm perfection, not evidence of a failure to preserve. In any event, an instruction that Picarella failed to mitigate his damages would be highly inappropriate in the face of the overwhelming documentation produced in this case evidencing that he did, and the utter absence of any suggestion that any failure to preserve was intentional.

### No Relevant Documents Concerning Mr. Rathjen Have Been Destroyed

Picarella similarly did not fail to preserve relevant communications with Kenneth Rathjen, a potential witness in this case. HSBC's assertion that documents were destroyed is based on the fact that Mr. Rathjen produced six e-mails reflecting communications with Picarella that Picarella did not himself produce. Those e-mails, however, have no relevance to this case, nor does HSBC claim otherwise. Three are from 2011, long before this case began. Two others – the Hurricane Sandy emails – are from 2013. Most importantly, the very fact of their production by Rathjen means that no spoliation has occurred – the documents exist and are in HSBC's possession.

HSBC notes that Mr. Rathjen testified that he was "sure" he had texted with Picarella, but no text messages were produced <u>by either individual</u>. That is because Picarella did not text with Mr. Rathjen. Mr. Rathjen's answer does not reflect certainty that such text messages exist, but only a possibility given that "[w]e text in the office." (Tr. 109) Mr. Rathjen went on to say that "I'm not a big texting guy." (Tr. 111)

For these reasons, we respectfully request that HSBC's motion for sanctions be denied in its entirety.

Respectfully submitted,

/s James R. Hubbard

James R. Hubbard

cc:　　Counsel of record (via ECF)